Lauth v. Harrison-Switzer Milling Co.

## Henry Lauth, Appellee, v. Harrison-Switzer Milling Company, Appellant

VERDICT—*when not disturbed as against the evidence.* A verdict will not be set aside on review as against the weight of the evidence unless clearly and manifestly so.

Action in case for personal injuries. Appeal from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the August term, 1907. Reversed. Opinion filed March 18, 1908.

C. E. POPE, for appellant.

WEBB & WEBB, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case in the Circuit Court of St. Clair county, by appellee against appellant, to recover damages for a personal injury received by appellee while in the service of appellant, as a laborer in and about its mill. Trial by jury. Verdict in favor

of appellee for $2,500. *Remittitur* $1,000. Judgment on the verdict for $1,500.

Appellee was a laborer fifty years old, and for a number of years prior to his injury was subject to epileptic fits. As his sister with whom he lived expresses it, these "falling spells would come on him every month at least and sometimes between." He was otherwise an able-bodied man and had worked for appellant in and about its mill for ten years; not continuously but frequently, working sometimes for a period of three or four days, sometimes three or four weeks and sometimes three or four months; and he "did his work first class."

The declaration upon which the case was tried consists of three counts. In each count it is charged, in substance, that on the sixteenth day of February, 1906, appellant negligently directed appellee to go upon the roof of a certain building about thirty feet high and to work near the edge of the roof, there being no railing or other means to prevent him from falling off of the roof and injuring himself, and that while at work there he was suddenly stricken with a fit, causing him to fall off the roof, whereby he was injured. (His right leg was broken and there was a cut or bruise above his left eye.) And in each count it is alleged, in substance: "That on said day and for several years prior thereto, he was a subject of epileptic fits, and by reason thereof his mind and reasoning faculties had become and were so impaired and weakened as to prevent him from knowing and appreciating the dangers of his employment, all of which the defendant well knew."

It is conceded by counsel for appellee, that to warrant a recovery it was necessary for appellee to prove that his "mind and reasoning faculties had become and were so impaired and weakened as to prevent him from knowing and appreciating the dangers of his employment," and that appellant knew of this condition or state of his mind and reasoning faculties.

The roof upon which appellee was directed to work was a flat roof, thirty-eight feet square, having a slope from the center towards the north side and the south side respectively of only eight inches. He went upon the roof by means of a stair-way, through the mill; and he was not required to go within fifteen feet of either edge of the roof, either in going to the place of his work or in performing it, after he got there. How or why he fell is not clearly disclosed,—he did not testify in his own behalf, and no one saw him fall; however, in the view we take of the case this is not material.

If there were any dangers incident to the place where appellant had directed appellee to perform his work, they were perfectly open and apparent to any one in possession of his natural senses and having sufficient mental capacity to know and appreciate so obvious and simple a situation.

There is no evidence tending to prove that appellee's sight or any of his natural senses were in the least defective or impaired, and there is no evidence tending to prove that his natural mental capacity was in any respect below the average of persons of his occupation. And it may be here noted, that the declaration is not based upon the theory or claim that he was naturally deficient in any of these respects, but that by reason of his bodily affliction, "his mind and reasoning faculties had become and were so impaired and weakened as to prevent him from knowing and appreciating the dangers of his employment;" and that this "was well known" by appellant.

The only evidence as to his mental condition at the time of his injury or at any time prior thereto, was the testimony of an expert on mental diseases, who in answer to a hypothetical question said: "In a very large per cent. of those cases the mentality is impaired, I should say 80 or 90 per cent.," and on cross-examination said: "A person afflicted with epilepsy for a long time usually has his mental faculties impaired, but not always." This, and the testimony of his sis-

ter, who said: ''Before the injury he would forget things that I would tell him, his memory was weak; I would have to tell him everything what to do; it seemed to be getting worse on him; when he would meet people that he knew as well as I, he would study first, he would not know right away who they were.''

The foregoing quotations disclose every word of evidence as to his mental condition. The expert's statement is not made with respect to appellee in particular, nor does he state anything as to the extent of impairment in the cases where it does occur, nor anything with respect to what particular faculties of the mind are or might be impaired in such cases. And the sister states only, that he had grown forgetful. Of all the people who knew him, associated with him and worked with him, not one is produced who says that his powers of perception, understanding and appreciating, or his reasoning faculties and judgment, were in the slightest degree impaired or imperfect. This state of evidence falls far short of placing appellee in the class of ''mental incompetents.''

If it can be said that the evidence tends to place him in that class and that it was, at least in the first instance, a question for the jury, still, there is one material requisite lacking. There is no evidence tending to prove that appellant knew that appellee's ''mind and reasoning faculties had become and were so impaired and weakened as to prevent him from knowing and ·appreciating the dangers of· his employment.'' True appellant had knowledge of the fact that appellee was to some extent subject to epileptic fits, but there is no evidence tending to prove that any one connected with appellant or its business knew that this might ''impair his mentality,'' only the expert knew that, and he, even, did not know whether it had in fact done so in this case. Much less are we warranted in assuming that appellant must have known that appellee's mentality was impaired to the extent charged in the declaration. It is also true that appellee's sister testi-

fied that he had become forgetful, but there is no evidence tending to prove that any one in any way connected with appellant or its business ever observed, knew or heard of that. So far as the evidence discloses, no one but his sister had ever observed or heard of that.

Appellee failed to make a *prima facie* case, and the trial court erred in refusing to direct a verdict in favor of appellant. For this error the judgment of the Circuit Court is reversed. And the court finds as ultimate facts to be incorporated in the judgment, that appellant did not know of any lack of mental capacity on the part of appellee to know and appreciate the dangers of his employment; and that appellee was injured as a result of dangers incident to the business in which he was engaged, and that the risks thereof were assumed by him.

*Reversed.*